UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SWAN,<br><br>   Plaintiff,<br><br>   v.<br><br>SAN JOAQUIN VALLEY COLLEGE, INC., et al.,<br><br>   Defendants. | 1:13-CV-01073-LJO-GSA<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br>(Docs. 33, 45) |

### INTRODUCTION

Plaintiff Daniel Swan ("Swan") brings this action for sex discrimination in violation of 20 U.S.C. § 1681(a) as well as for sex harassment and discrimination, sexual battery, negligent hiring, defamation, breach of contract, and intentional infliction of emotional distress under California law against Defendants San Joaquin Valley College, Inc. ("SJVC"), Melissa Grimsley ("Grimsley"), and Kerrie Liles ("Liles") (collectively, "Defendants"). Currently before the Court are Defendants' motions for summary judgment as to Plaintiffs' first amended complaint in its entirety. Swan brings his federal claim against Defendant SJVC only. For the reasons discussed below, the Court GRANTS Defendant SJVC's motion for summary adjudication as to Swan's federal claim, REMANDS to state court Swan's state law claims, and DENIES AS MOOT Defendants Liles and Grimsley's motion for summary judgment as to Swan's claims against them.

1

**BACKGROUND**

**A.    Facts Related to Swan's Federal Claim[1]**

In May 2011, Plaintiff Swan enrolled as a student in SJVC in its respiratory therapy program at its Visalia campus. In enrolling, Swan acknowledged, in writing, his receipt of the College Catalog and Student Handbook, and also acknowledged receipt and understanding of the RT Program "components and program requirements," including an "[a]greement to follow the college standards, guidelines, and policies as outlined in the student handbook, college catalog and RT program policy" and "[a]cademic, attendance, professional and satisfactory progress policies at SJVC and the RT profession." Defs.' Reply to Pls. Response to Joint Statement of Undisputed Facts, Doc. 68 (hereinafter "DSUF") # 4. SJVC's College Catalog, in effect at the time of Swan's matriculation, provides in relevant part as follows: "SJVC does not and will not tolerate intentional involvement in dishonest academic behavior(s). Students who violate this policy will be subject to formal discipline, which may include the assignment of a failing grade, or in some cases, termination from the College." (DSUF # 5). The Respiratory Clinical Manual provides in relevant part as follows: "Any missed shift (portion thereof) or other absence from the clinical site should be clearly reflected on the daily time sheet. Falsification, forging or misrepresentation of reported hours may result in termination from clinical. The attendance line and clinical instructor must be notified prior to leaving facility." (DSUF # 7).

Sometime between July 26, 2012 and August 7, 2012, Swan turned in an assignment in the RT 103 course taught by Defendant Grimsley titled "Ventilator Graphics" worksheet. (DSUF # 8). After receiving Swan's assignment, Grimsley in her grade sheet gave Swan a final score of zero for the assignment and marked that the score was for "copy[.]" (DSUF # 9, 18). Grimsley conferred with Barry Westling, the Respiratory Therapy Program Director and her supervisor, regarding the

---

[1] These are derived from facts that the parties do not substantively dispute, Docs. 49, 57, as reflected in Doc. 68, including key background facts contained in the operative complaint that are not disputed.

2

assignment turned in by Swan in her course. (DSUF # 10). Grimsley entered the grade of zero for that assignment for Swan on August 7, 2012 in SJVC's electronic grading system. (DSUF # 18).

Swan was assigned to clinical training at a Kaiser hospital through an internship program. On July 31, 2012 Grimsley was contacted by Nicole Bourbon, a Kaiser supervisor and respiratory therapist in Fresno. (DSUF # 11). After receiving the call from Bourbon, Grimsley called and texted Swan to determine his whereabouts. (DSUF # 12). Swan responded to Grimsley via text message that he was told to go study in the lobby and that he was still in the lobby. (DSUF # 13). On August 1, 2012, SJVC's Director of Clinical Education, Christine Foster, made an inquiry regarding Swan's attendance at Kaiser on July 31, 2012. (DSUF # 15, 19). On August 9, 2012, William Eropkin, the Pulmonary Clinical Services Manager at Kaiser, responded to Foster's inquiry. (DSUF # 20). Eropkin stated that, on July 31, 2012, no one at Kaiser had sent Swan home, that Swan had stated at approximately four o'clock PM that he was going to a different hospital ward, but that he was nowhere to be found, and that Bourbon had contacted Grimsley at about six o'clock PM. (DSUF # 20). Foster later determined that Swan would not return to Kaiser, and Swan was assigned to a clinical site in Hanford. (DSUF #16).

On August 1, 2012, Swan met with SJVC Dean of Student Services Kerrie Liles regarding a complaint of alleged sexual harassment against Grimsley. (DSUF #44). Liles had Swan reduce his complaint to writing. (DSUF # 45). On August 1, 2012, Liles informed SJVC Dean of Academic Affairs Tami Olson of Swan's verbal complaint regarding Grimsley. (DSUF # 57). On August 2, 2012, Liles met with Matthew Paul, a classmate of Swan's and the only witness identified by Swan in his verbal complaint. (DSUF # 55). At Defendant Liles' request, Swan put his complaint in writing and submitted it to Liles on August 3, 2012. (DSUF # 45). At some point in August 2012, after Swan made his complaint regarding Grimsley, Olson met with Grimsley about Swan's complaint. (DSUF # 59). Olson then provided a written summary of her findings and conclusions to Liles. (DSUF # 63). After Swan's complaint, Grimsley's clinical instructor shifts at clinical sites where Swan was assigned were covered by other clinical instructors so that she would not be at the same sites with Swan or supervising Swan. (DSUF # 68). Grimsley no longer made or had one-on-one contact with Swan. (DSUF # 67-70). After Swan complained, he completed the remaining two or three weeks of the

3

course taught by Grimsley in his third term in the respiratory therapy program. (DSUF # 67). Grimsley was no longer his clinical instructor for the remainder of Swan's time at SJVC. (*Id*.). After meeting with Liles on August 1, 2012 and submitting his complaint in writing on August 3, 2012, Swan did not make any further complaints regarding sex or gender-related conduct by Grimsley. (DSUF #71).

In Swan's third term in the respiratory therapy program, Swan's final grade in the RT 103 course taught by Grimsley was an "A." (DSUF #72).

In Swan's fourth term in the program, he was assigned to the Veterans' Administration Medical Center ("the V.A.") in Fresno. (DSUF # 29). On October 11, 2012, Swan left the V.A. Hospital before his shift ended. (DSUF # 30). Swan notified John Batch, Swan's V.A. supervisor, about his early departure. (DSUF # 32, 35). Swan did not notify Westling, Foster, or any other SJVC instructor before leaving. (DSUF # 31). Westling made a site visit to the V.A. Hospital on October 11, 2012 and was informed by Batch as to Swan's early departure. (DSUF # 32). Swan later turned in his clinical timesheet for October 11, 2012, indicating that he had worked a full shift at the V.A. when in fact he had not. (DSUF # 34). On October 19, 2012, Swan wrote an e-mail to Foster stating that he "goofed" on his timesheet in indicating that he worked a full shift and that he had made up the two hours he incorrectly credited to himself. (DSUF # 36).

On October 23, 2012, Liles and Westling met with Swan and terminated Swan from the respiratory therapy program. (DSUF # 39). Swan appealed his termination decision to the Campus Director, Don Wright, pursuant to SJVC policy. (DSUF # 40). Wright denied Swan's appeal. (DSUF # 43).

Swan filed a charge of discrimination with California's Department of Fair Employment and Housing ("DFEH") and received a right to sue letter dated May 31, 2013. (First Amended Complaint ("FAC") ¶21, Ex. A).

B. **Procedural History**

Swan brought this action for sex discrimination and retaliation in violation of 20 U.S.C. § 1681(a) ["Title IX"] as well as for sexual harassment and discrimination, sexual battery, negligent hiring, defamation, breach of contract, and intentional infliction of emotional distress under California

4

law against Defendants in Fresno County Superior Court on or about June 3, 2013. On July 12, 2013, Defendants timely removed this action to this Court on the basis of federal question jurisdiction over Swan's Title IX claim and supplemental jurisdiction over Swan's state law claims. (Doc. 1). Swan filed the operative first amended complaint ("FAC") on October 29, 2013. (Doc. 14). The FAC names SJVC as the only defendant in the Title IX claim. (FAC at ¶¶ 74-80.)

On October 20, 2014, Defendants filed the instant motions for summary judgment as to the FAC in its entirety. (Docs. 33, 45). SJVC moves for summary judgment on the Title IX and state law claims; Defendants Grimsely and Liles move for summary judgment as to the state claims brought against them. *Id*. Swan filed an opposition to Defendants' motions on November 3, 2014, and Defendants filed replies on November 10, 2014 and November 13, 2014. (Docs. 59, 67, 68).

**DISCUSSION**

**I. Evidentiary Objections**

"In general, only admissible evidence may properly be considered by a trial court in granting summary judgment." *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 n. 9 (9th Cir. 1980).

Swan has filed objections to ten statements in declarations filed by SJVC in support of its motion for summary judgment. (Doc. 56). Likewise, SJVC has filed objections to six statements in declarations filed by Swan in support of his opposition to this motion. (Doc. 68). However, these statements do not bear on the Court's decision herein, and therefore the parties' objections to them need not be addressed. The court need only decide evidentiary objections that are material to its ruling. *Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir. 2010).

**II. Motion for Summary Judgment**

    **A.   Legal Standard**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidvits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.* When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson,* 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun,* 509 F.3d at 984.

**B.  Analysis**

Defendants seek summary adjudication as to each cause of action in the complaint.

**1. Federal Claim**

In his ninth cause of action, Swan alleges that Defendant SJVC retaliatorily terminated him from participating in courses, denied him the benefits of education, and discriminated against him on

the basis of his gender, all in violation of Title IX, 20 U.S.C. § 1681(a). As such, Swan appears to assert a sex discrimination claim and a retaliation claim under Title IX against SJVC. Swan does not bring this claim against Grimsley or Liles.

### i. Title IX Sex Discrimination

The Supreme Court has held that sexual harassment is a form of discrimination for Title IX purposes. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (citing *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 281 (1998), *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 74-75 (1992)). "If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment." *Id*. at 644 (quoting Title IX, 20 U.S.C. § 1681(a)). "That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it. *Id*. at 645 (quoting Random House Dictionary of the English Language 1415 (1966), Webster's Third New International Dictionary 2275 (1961)). Funding recipients are deemed "deliberately indifferent" to acts of harassment "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. at 648. Therefore, "funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. at 650.

Even if Swan could establish that Grimsley's conduct toward him constituted harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive Swan of access to the educational opportunities or benefits provided by SJVC, Swan fails to present evidence to show that SJVC acted with deliberate indifference with regard to Grimsley's alleged sexual harassment of Swan. *Id*. The parties agree and the evidence shows that Swan first complained about Grimsley in his meeting with Liles on August 1, 2012. (DSUF # 44). Liles testified that she met with Swan about his complaint, gathered information and investigated the complaint, and then forwarded that information on to Olson, who, as the academic dean, has supervision over faculty. (Liles Dep. 35:14-37:10). The parties also agree that, on the following day, Liles contacted, met with, and interviewed Matthew Paul,

the only witness identified by Swan, regarding Swan's complaint. (DSUF # 55). Olson testified that, after she was informed of Swan's complaint regarding Grimsley and received Swan's written complaint, she contacted Grimsley on August 7, 2012 and interviewed her on August 8, 2012 about her interactions with Swan. (Olson Dep. 14:18-15:11). Olson also testified that she had never received any complaints regarding Grimsley prior to Swan's complaint. (Olson Dep. 17:4-8). The parties agree that Swan accused Grimsley of sending him inappropriate and offensive text messages, that Swan produced all of the text messages from Grimsley that were on his phone, and that the text messages Swan produced refer only to school and clinical assignments without any mention or inference of gender or sex. (Swan Dep. 193:13-25; DSUF # 53). Olson further testified that, based on the information given to her by Liles, her interview with Grimsley, and viewing Grimsley's text messages, she concluded that there was no evidence of sexual harassment. (Olson Dep. 17:9-20). Olson testified that, following her interview with Grimsley, Olsen conferred with Liles regarding Swan's complaint and determined that it would be in the best interests of Swan, Grimsley, SJVC and SJVC students for Grimsley to no longer be Swan's clinical supervisor. (Olson Dep. 18:20-19:3). Olson testified she then made arrangements with Foster, the clinical director, to that effect. *Id*. The parties agree that, after Swan's complaint, Grimsley's clinical instructor shifts at clinical sites where Swan was assigned were covered by other clinical instructors so she would not be at the same sites with Swan, nor would she be supervising Swan. (DSUF # 68). SJVC also provides direct evidence to show that Grimsley was not the classroom instructor for any courses in which Swan was enrolled following his third term. (Pearce Decl. Exhs. 1, 2). SJVC presents evidence that there have been no complaints against Grimsley prior to Swan's complaint, and there is no evidence that Swan made any further complaints as to Grimsley's conduct relating to sex or gender. *See*, Foster Decl. ¶ 10; Liles Decl. ¶ 5; Zaczek Decl. ¶ 6.

In addition, as further discussed below, Swan fails to raise a genuine issue of material fact to show that SJVC terminated him in retaliation for his complaint against Grimsley. *See*, *infra*.

Therefore, based on the evidence before the Court, Swan fails to put forth evidence to raise a genuine issue of material fact as to whether SJVC's response to Swan's complaint of harassment was

"clearly unreasonable in light of the known circumstances" as required to show deliberate indifference. *Davis*, 526 U.S. at 648.

### ii. Title IX Retaliation

In his ninth cause of action, Swan also alleges that SJVC retaliated against him for making the complaint of sexual harassment against Grimsley by terminating him from their respiratory therapy program in violation of Title IX.

The Ninth Circuit recently expressly adopted the framework used to assess Title VII retaliation claims to analyze Title IX retaliation claims. *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012). "In this framework, a plaintiff who lacks direct evidence of retaliation must first make out a *prima facie* case of retaliation by showing (a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Id.* (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)).

The parties do not dispute that Swan engaged in a protected activity by making the sexual harassment complaint or that he suffered an adverse action in being terminated from SJVC's respiratory therapy program. SJVC contends that Swan fails to show the requisite causal link between the complaint and his termination. The Ninth Circuit has instructed that, "[a]t the *prima facie* stage of a retaliation case, 'the causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative ... action are not completely unrelated.'" *Id.* at 726 (quoting *Poland v. Chertoff*, 494 F.3d 1174, 1180 n. 2 (9th Cir. 2007); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). The Ninth Circuit further has found that proximity in time between a protected complaint and an adverse action can be "strong circumstantial evidence of causation" at the *prima facie* stage. *Id*. Here, the evidence shows that Swan began attending SJVC in or around July 2011, that he made the complaint on August 1, 2012, and that he was terminated from the respiratory therapy program on October 23, 2012.

Once a plaintiff has made the threshold *prima facie* showing, the defendant must articulate a legitimate, non-retaliatory reason for the challenged action. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.2008). If the defendant puts forth non-retaliatory reasons for the action, the burden shifts back to the plaintiff to show that the defendant's proffered reasons were actually a pretext for

9

retaliation. *Id*. Even assuming, without deciding, that Swan shows the causal link and establishes a *prima facie* case of retaliation, SJVC provides non-retaliatory reasons for Swan's termination, and Swan fails to show that SJVC's proffered reasons are actually a pretext for retaliation.

SJVC provides evidence that Westling, as Program Director of the respiratory therapy program, in consultation with Liles, as the Dean of Student Services, decided to terminate Swan from the program due to three incidents in which Swan violated SJVC policy: 1) Kaiser's inability to locate Swan during his clinical rotation at Kaiser on July 31, 2012; 2) Swan's turning in an assignment as his own that Westling determined was done by another student; and 3) Swan leaving his shift at the V.A. early without notifying or obtaining permission from SJVC staff on October 11, 2012, turning in a timesheet that claimed hours he did not work for October 11, 2012, and making up those hours without permission from SJVC. (Westling Dep. 13:7-11; 24:9-15). SJVC also provides evidence that Swan's alleged conduct in those incidents violates SJVC policy. (DSUF 4, 5, 7). As such, SJVC articulates non-retaliatory reasons for Swan's termination.

Therefore, the burden shifts back to Swan to show that SJVC's proffered reasons are actually pretext for retaliation. *Davis*, 520 F.3d at 1089. "A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1094-5 (9th Cir. 2005). If the plaintiff uses circumstantial evidence to meet the burden, the circumstantial evidence can take two forms: "First, the plaintiff can make an affirmative case that the employer is biased. For example, statistical evidence is circumstantial evidence that could, if sufficiently probative, point to bias. Second, the plaintiff can make his case negatively, by showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.'" *Id*. at 1095 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 663 (9th Cir. 2002)). "[W]hen the plaintiff relies on circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Id*. (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). *See also*, *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) ("A party opposing a summary judgment motion must produce '*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed.")

(quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979)) (emphasis in the original).

Swan attempts to show SJVC's proffered reasons are unworthy of credence using circumstantial evidence in order to meet his burden. As discussed above, SJVC puts forth three reasons for terminating Swan. Swan counters those reasons by claiming that (1) he was studying in the lobby at Kaiser during his shift on July 31, 2012 because he was instructed by Kaiser personnel do to so and left Kaiser on Grimsley's advice; (2) Grimsley forged the alleged copied homework assignment from him; and (3) he thought he was following protocol by informing Batch instead of SJVC instructors of his early departure on October 1, 2012 and making up those hours without the involvement of SJVC. (Compl. Pp. 5, 9-10). There is evidence of the communication between Swan and Grimsley on July 31, 2012 to support Swan's contention that he left Kaiser on the advice of Grimsley. (Grix Dec., Doc. 51, Exh. 1 (Liles Dep.) p. 71). However, the text message communication seems to indicate that personnel at Kaiser had been looking for Swan and could not locate him. *Id*. In addition, there is no specific and substantial circumstantial evidence to show that the account given by Eropkin that Bourbon contacted Grimsley on July 31, 2012 because Kaiser personnel could not locate Swan on his shift was inaccurate. Swan also presents no evidence to show that Grimsley forged the homework assignment that Westling determined Swan had copied. Rather, Liles testified that, when she met with Swan on August 22, 2012 to discipline him for the July 31, 2012 incident at Kaiser and for the copied homework assignment, Swan admitted to copying the homework assignment. (Liles Dep. 19:8-24). Swan disputes Liles' testimony as to disciplining Swan on August 22, 2012 for plagiarism in that her notes show he was given a "formal written warning" when in fact nothing in writing was provided to him. (See DSUF # 25). However, Liles testified that "formal written warning" was terminology used at SJVC to indicate that it was documented in the CampusVue system, and that no documentation is given to the student. (Liles Dep. 86:8-24). In addition, Swan does not appear to contest the facts of the October 11, 2012 early departure incident at the V.A. and the inaccurate timesheet. Swan also presents no evidence to show that his conduct at the V.A. on October 11, 2012 and aftermath were in compliance with SJVC policy. Finally, Swan points to no evidence to show that his termination from the respiratory therapy program represents an abnormal, unique, or

selective application of SJVC policy. *See*, *Steckl*, 703 F.2d at 393 ("Steckl's mere assertions that Motorola had discriminatory motivation and intent in failing to promote him were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment.") (citing *Berkelman v. San Francisco Unified School District*, 501 F.2d 1264 (9th Cir. 1974)).

Therefore, Swan fails to present direct evidence or specific and substantial circumstantial evidence that SJVC's proffered reasons for terminating him are unworthy of credence. *Coghlan*, 413 F.3d at 1095; *Steckl*, 703 F.2d at 393. Accordingly, Swan fails to raise a genuine issue of material fact to show that SJVC's proffered reasons are pretext for retaliation. *Davis*, 520 F.3d at 1089.

Because Swan fails to raise a genuine issue of material fact as to his Title IX sex discrimination claim and as to his Title IX retaliation claim, SJVC's motion for summary adjudication as to Swan's ninth cause of action for violations of Title IX is GRANTED.

**2. State Law Claims**

In the first eight causes of action, Swan brings claims for sexual harassment and discrimination, sexual battery, negligent hiring, defamation, breach of contract, and intentional infliction of emotional distress under California law against Defendants.

Defendants removed this action to this Court from Fresno County Superior Court on the basis of federal question jurisdiction over Swan's Title IX claims. (Doc. 1).

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim where the district court has dismissed all claims over which it has original jurisdiction. As discussed above, this Court grants SJVC's motion for summary adjudication as to Swan's only federal cause of action. Moreover, as this Court routinely advises counsel, this Court carries the heaviest caseload in the nation. *See*, Preliminary Statement, *supra*. Therefore, there is no reason for this Court to expend its limited resources to adjudicate claims that are purely a matter of state law when no federal claims remain.

Accordingly, this Court DECLINES to exercise supplemental jurisdiction over Swan's first through eighth causes of action and REMANDS them to Fresno County Superior Court. Because Grimsley's and Liles' motion for summary judgment only addresses the state law claims against them, their motion is DENIED as moot.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court:

1. GRANTS Defendant San Joaquin Valley College, Inc.'s motion for summary adjudication as to Plaintiff Daniel Swan's ninth cause of action for violations of Title IX;

2. DECLINES to exercise supplemental jurisdiction over and REMANDS to Fresno County Superior Court Swan's first, second, third, fourth, fifth, sixth, seventh, and eighth causes of action under California law against Defendants;

3. DENIES as moot Defendants Kerrie Liles and Melissa Grimsley's motion for summary judgment as to Swan's claims against them; and

4. ORDERS the Clerk of Court to close this case.

IT IS SO ORDERED.

Dated: **January 7, 2015**         /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE

13